# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREL STEFFY AND | : | |
| SUSANNE STEFFY | : | Case No. 1:06-CV-02227 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| | : | |
| THE HOME DEPOT, INC. AND | : | |
| PATRIOT TIMBER PRODUCTS | : | |
| INTERNATIONAL, INC. | : | |

## <u>MEMORANDUM</u>

Before the Court is Defendant Patriot Timber Products International, Inc.'s ("Patriot") second motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56. The motion is fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted.

**I.    BACKGROUND**

    **A.  Factual Background[1]**

In September 2005, the Plaintiffs Darrel Steffy and his wife, Susanne Steffy, began construction of a building on their property for various uses, including: storage, fitness, entertaining friends, display space for hunting trophies, and office space. (Doc. No. 67 ¶ 3.) While browsing around Home Depot, Mr. Steffy spotted plywood and decided to use it to panel the interior walls of the building (other than the garage) because it would be cheaper and more sturdy than drywall. (Doc. No. 67 ¶ 11) On or about November 10, 2005, he purchased 300 four by eight foot sheets of 3/4 inch thick, 13 ply, cabinet grade plywood from Home Depot at $23.00

---

[1] For efficiency, these facts, which remain applicable, are taken from the Court's recent memorandum and order adjudicating the parties' first motions for summary judgment.

per sheet. (Id..) He purchased an additional 100 sheets of similar plywood on January 3, 2006. (Id. ¶ 14.) This plywood was supplied to Home Depot from Defendant Patriot. (Doc. No. 63 ¶ 17.) After the project was completed, starting around February 2006, people inside the building began to notice adverse effects from being inside the structure, including: watering and burning eyes, headaches, and burning in the throat. (Doc. No. 63 ¶ 21.)

When a handheld device revealed formaldehyde in the air, Mr. Steffy contacted Edward Montz Jr. ("Montz") of Indoor Air Solutions ("IAS") to test the building's air on July 20, 2006. (Doc. No. 67 ¶¶ 19-20.) Following the results from these tests on the plywood paneling, Montz concluded that "[t]he paneling obtained by Mr. Steffy and installed in the above-referenced building is a very potent source of formaldehyde in the building (estimated to be over 20 times the OSHA maximum Permissible Exposure Limit for industrial workplace environments at the time of installation)." (Doc. No. 63-7, Ex. G at 6 at 10.) He further concludes that of the various options to fix the problem, the best would be "a complete removal of all of the paneling and any reservoirs in the building which currently exist." (Id. at 11.) Defense experts disagree with Montz's conclusion on causation and instead conclude that decisions made in construction of the building, other formaldehyde producing materials, and an inadequate ventilation system have caused the formaldehyde problem. (Doc. No. 64 ¶¶ 60-64.)

**B. Procedural Background**

The Plaintiffs have stated causes of action for strict liability and negligence against both defendants. (Doc. No. 1 ¶¶ 50-59.) In a memorandum and order issued on March 31, 2009, the Court dismissed the Plaintiffs' strict liability and negligence claims against Defendant Home Depot based on application of the economic loss doctrine. (Doc. No. 185.) Patriot, though

charged under the same theories, did not raise the economic loss bar.  (See Doc. No. 186 ¶ 7.) Because of the Court's favorable ruling on their co-defendant's motion, Patriot has now brought this second motion for summary judgment to raise the issue on their own behalf.

**C. Standard of Review**

The Defendant has moved for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## II. DISCUSSION

### A. Economic Loss Doctrine

Patriot argues, pursuant to the law of the case doctrine, that "this Court's dismissal of Plaintiffs' claims of strict liability and negligence against The Home Depot requires the dismissal of Plaintiffs' identical claims of strict liability and negligence against Patriot." (Doc. No. 187 at 8.) Plaintiffs state that they never had any direct legal relationship with Patriot and so they lacked the contractual remedies they had against Home Depot as the seller of the product. (Doc No. 189 at 2.) Because of this factual distinction, Plaintiffs argue that the economic loss doctrine is not appropriately applied to their strict liability and negligence claims against Patriot. (Id.)

The Court set out the basic formulation of the economic loss doctrine in its recent memorandum and order adjudicating the first summary judgment motions:

> [i]n Pennsylvania, the economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.' Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002). It operates to foreclose tort causes of action for economic injury unattended by physical injury or damage to real

4

> or personal property. Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003). As such, when the product defect causes damage only to the product itself, there can be no cause of action in negligence or strict liability. See Nufeeds, Inc. v. Westmin Corp., 2006 WL 1000021, *8 (M.D. Pa. 2006). The doctrine has been adopted to uphold the important distinctions between the objectives of tort and contractual theories of recovery; 'contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving . . . economic losses.' Werwinski, 286 F.3d at 671 (quoting REM Coal Co. Inc. v. Clark Equipment Co., 563 A.2d 128, 133 (Pa. Super. Ct. 1989)).

(Doc. No. 185 at 21.) Plaintiffs seem to argue here, relying on a case from the Pennsylvania Court of Common Pleas, that contract theories such as breach of implied warranty were not aimed at and suited to providing redress under these circumstances because they had no contractual relationship with Patriot. (See Doc. No. 189 at 2.) As Patriot points out, however, recovery for breach of implied warranty in Pennsylvania is not dependant on the existence of privity of contract. See Goodman v. PPG Industries, Inc., 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) ("Specifically, our Supreme Court has long held that, for breach of the implied warranty of merchantability, anyone injured by the defective product may sue, and anyone in the distributive chain may be sued") (citing Williams v. West Penn Power Co., 467 A.2d 811 (Pa. 1983); see also Kassab v. Central Soya, 246 A.2d 848 (Pa. 1968); Spagnol Enterprises Inc. v. Digital Equipment Corp., 568 A.2d 948, 952 (Pa. Super. Ct. 1989). Considering these authorities, and the other arguments made by Patriot in its brief, the Court finds that Plaintiffs' argument that there is a distinction between the tort claims brought against Patriot and Home Depot is unpersuasive. Accordingly, pursuant to this Court's prior ruling, dismissing the strict liability and negligence claims brought against Home Depot based on the economic loss doctrine, the Court will also

5

dismiss the identical claims against Patriot.

### B. Leave to Amend

In their brief in opposition, Plaintiffs request that "the Court grant them leave to amend their Complaint to include claims against Patriot for breach of the implied warranty of merchantability and breach of The Magnuson-Moss Act, both of which have already been pled against The Home Depot and survived summary judgment." (Doc. No. 189 at 3.) Requesting leave to amend at the end of the brief in opposition is not the proper method to bring such a motion before the Court. See Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 205-206 (3d Cir. 2006) (citing Ramsgate Court Townhome Assoc. v. West Chester Borough, 313 F.3d 157, 206 (3d Cir. 2002)). A request for leave to amend at this point in the proceedings, with trial only weeks away, involves important and complex determinations that should be made on a full record. While the Court acknowledges a draft proposed complaint has been filed and that Patriot has responded to the Plaintiffs' request, there has been no formal motion for leave to amend, no attempt to comply with Middle District Local Rule 7.1, and no opportunity for the Plaintiffs to respond to Patriot's arguments made on this issue in their reply brief. Accordingly, the Court will not consider the request as presented, but would consider a subsequent, properly presented motion to amend.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Patriot's motions for summary judgment. An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARREL STEFFY AND** | : | |
| **SUSANNE STEFFY** | : | Case No. 1:06-CV-02227 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **THE HOME DEPOT, INC. AND** | : | |
| **PATRIOT TIMBER PRODUCTS** | : | |
| **INTERNATIONAL, INC.** | : | |

# ORDER

**AND NOW**, this 21st day of May 2009, upon consideration of the motion for summary judgment by Defendant Patriot Timber Products (Doc. No. 186), filed in the above-captioned matter, and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**. The strict liability and negligence claims brought against Defendant Patriot Timber Products are **DISMISSED**. **IT IS FURTHER ORDERED THAT** the defendant, Patriot Timber Products, is **DISMISSED** from this action.

      s/ Yvette Kane
      Yvette Kane, Chief Judge
      United States District Court
      Middle District of Pennsylvania