# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARREL STEFFY AND** | : | |
| **SUSANNE STEFFY,** | : | Case No. 1:06-CV-02227 |
| | : | |
| **Plaintiffs** | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **THE HOME DEPOT, INC. AND** | : | |
| **PATRIOT TIMBER PRODUCTS** | : | |
| **INTERNATIONAL, INC.** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court are motions for reconsideration[1] and for leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure by Plaintiffs' Darrel Steffy and Susanne Steffy. (Doc. No. 199.) The motions are fully briefed and are ripe for disposition. For the reasons that follow, the motions will be denied.

## I. BACKGROUND

### A. Factual Background[2]

In September 2005, the Plaintiffs Darrel Steffy and his wife, Susanne Steffy, began construction of a building on their property for various uses, including: storage, fitness,

---

[1] The Plaintiffs seek reconsideration of the Court's order dated May 21, 2009, "as to the dismissal of Patriot as a defendant so that the motion for leave to amend the complaint can be processed with Patriot as a party to the matter." (Doc. No. 200.) They further explain in their reply brief that "they merely ask that the Court temporarily defer its ruling, pending consideration of plaintiffs' request for leave to amend their complaint." (Doc. No. 209.) As this order denies the Plaintiffs' request for leave to amend, the Plaintiffs' motion for reconsideration will be denied as moot.

[2] For efficiency, these facts, which remain applicable, are taken from the Court's recent memorandum and order adjudicating the parties' first motions for summary judgment.

entertaining friends, display space for hunting trophies, and office space. (Doc. No. 67 ¶ 3.) While browsing around Home Depot, Mr. Steffy spotted plywood and decided to use it to panel the interior walls of the building (other than the garage) because it would be cheaper and more sturdy than drywall. (Doc. No. 67 ¶ 11) On or about November 10, 2005, he purchased 300 four by eight foot sheets of 3/4 inch thick, 13 ply, cabinet grade plywood from Home Depot at $23.00 per sheet. (Id..) He purchased an additional 100 sheets of similar plywood on January 3, 2006. (Id. ¶ 14.) This plywood was supplied to Home Depot from Defendant Patriot Timber Products. (Doc. No. 63 ¶ 17.) After the project was completed, starting around February 2006, people inside the building began to notice adverse effects from being inside the structure, including: watering and burning eyes, headaches, and burning in the throat. (Doc. No. 63 ¶ 21.)

When a handheld device revealed formaldehyde in the air, Mr. Steffy contacted Edward Montz Jr.'s ("Montz") of Indoor Air Solutions ("IAS") to test the building's air on July 20, 2006. (Doc. No. 67 ¶¶ 19-20.) Following the results from these tests on the plywood paneling, Montz concluded that "[t]he paneling obtained by Mr. Steffy and installed in the above-referenced building is a very potent source of formaldehyde in the building (estimated to be over 20 times the OSHA maximum Permissible Exposure Limit for industrial workplace environments at the time of installation)." (Doc. No. 63-7, Ex. G at 6 at 10.) He further concludes that of the various options to fix the problem, the best would be "a complete removal of all of the paneling and any reservoirs in the building which currently exist." (Id. at 11.) Defense experts disagree with Montz's conclusion on causation and instead conclude that decisions made in construction of the building, other formaldehyde producing materials, and an inadequate ventilation system have caused the formaldehyde problem. (Doc. No. 64 ¶¶ 60-64.)

2

### B. Procedural Background

The Plaintiffs have stated causes of action for strict liability and negligence against both defendants. (Doc. No. 1 ¶¶ 50-59.) In a memorandum and order issued on March 31, 2009, the Court dismissed the Plaintiffs' strict liability and negligence claims against Defendant Home Depot based on application of the economic loss doctrine. (Doc. No. 185.) Patriot Timber, though charged under the same theories, did not raise the economic loss bar. (See Doc. No. 186 ¶ 7.) Because of the Court's favorable ruling on their co-defendant's motion, Patriot Timber brought a second motion for summary judgment to raise the issue on their own behalf. (Doc. No. 186.) The Court granted this motion, dismissing all remaining claims against Patriot Timber. (Doc. No. 198.)

## II. LEAVE TO AMEND

Plaintiffs request that the Court grant them "leave to amend their complaint to include claims against Patriot for breach of the implied warranty of merchantability and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, both of which have already been pled against The Home Depot and survived summary judgment." (Doc. No. 200 at 1.)

The Federal Rules of Civil Procedure embody the federal system's liberal approach to pleading. See Arthur v. Maersk, Inc., 434 F.3d 196, 202 (3d Cir. 2006) (citing Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)). Rule 15(a)(2) directs that "[t]he court should freely give leave [to amend] when justice so requires." The court may deny leave to amend if the plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). A court may also deny leave to amend if the

amendment would be futile. In re Merck & Co., Inc., Sec. Derivative & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007).

**A. Prejudice**

The Third Circuit has consistently held that prejudice to the non-moving party is the touchstone for the denial of a motion to amend. Maersk, 434 F.3d at 204 (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)). The question of prejudice requires that the Court focus on hardship to the defendants if the amendment were permitted, specifically, whether amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton, 242 F.3d at 273.

Patriot argues that it would suffer "severe prejudice" if forced to mount a last-minute defense against the new implied warranty claims. (Doc. No. 203 at 12.) In support of this contention, Patriot points out that the case was filed by Plaintiffs over two years ago and has already proceeded through extensive discovery and pre-trial motions. (Doc. No. 203 at 13.) Patriot also claims that it would have conducted discovery differently had the implied warranty claims been asserted from the beginning:

> Patriot would have conducted its deposition of Mr. Steffy in a different manner, with increased emphasis on Mr. Steffy's status as the intended user of the product. Patriot would have asked more questions about Mr. Steffy's construction experience and his decision to use the wood for the application involved. Patriot would have also placed increased emphasis on Mr. Steffy's communications with the Home Depot.

(Id.) Patriot further complains that the new theories would potentially alter its relationship with Home Depot:

> Patriot would have been compelled to conduct thorough discovery on

4

> Home Depot's marketing of the plywood and its representation of the plywood's intended use. In doing so, Patriot would have deposed numerous Home Depot employees, including managers and buyers, to gather information on how The Home Depot's actions affected the plywood's merchantability. The contractual relationship between Patriot and The Home Depot with respect to the purchase of the plywood would also become an area of inquiry, and would require discovery as to the formation and terms of the contract between Patriot and The Home Depot.

(Id.) The Plaintiffs deny that Patriot would experience any prejudice from changing the theory of liability from negligence and strict liability to implied warranty, arguing that "[w]hether plaintiffs proceeded under a theory of strict liability, negligence or breach of warranty, proof of product defect is the common denominator of all these claims." (Doc. No. 200 at 4.) Plaintiffs suggest that the tort claims and implied warranty claims are similar enough that Patriot's defenses would not be altered. (Id. at 5.) The Plaintiffs also point out that the additional discovery topics identified by Patriot have already been exhausted in defense of the tort claims. (Id.)

The Court must agree with the Plaintiffs that the relationship between Patriot and Home Depot is not likely to change given the agreement between them. (See Doc. No. 209-1 Ex. A.) The Court also must agree with the Plaintiffs that the tort and implied warranty claims asserted in this case are similar. It is clear, even from a case that Patriot cited in support of its motion for summary judgment, that implied warranty claims and tort product liability claims are similar under Pennsylvania law. See Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) (citing Salvador v Atlantic Steel Boiler Co., 319 A.2d 903, 907-08 (Pa. 1974)) ("Our Supreme Court harmonized the rules governing implied warranty claims with the rules governing products liability claims, because the two types of actions are now substantially similar."); see also Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 94 (3d Cir. 1983) (examining the similarity

between claims for implied warranty of merchantability and strict products liability). The implied warranty of merchantability claim is based on 13 Pa. Cons. Stat. Ann. § 2314, which provides in pertinent part:

> a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . Goods to be merchantable must be at least such as:
> . . . .
> (3) are fit for the ordinary purposes for which such goods are used.

As such, many pertinent issues with the implied warranty claim already permeate the recently dismissed tort claims against Patriot. See Coventry v. United States Steel, 856 F.2d 514, 519 (3d Cir. 1988.) Further, the implied warranty claim asserted against Home Depot since the beginning of the case is based on the same conduct, so it has been a part of this litigation.

Despite this, the implied warranty claim is not identical to the tort causes of action. See Phillips v. Cricket Lighters, 883 A.2d 439, 445 n.6 (Pa. 2005) ("We note that Appellants have strenuously argued that as this court has determined that Appellee's strict liability claim has failed, then that finding *de facto* precludes Appellee's implied breach of warranty claim. . . . While there are similarities between the two causes of action, they are certainly not identical. . . . Accordingly, we reject Appellants' invitation that we hold that strict liability and implied breach of warranty claims are coterminous.") The implied warranty claim derives from a different source, involves a potentially divergent standard for liability, see Hittle v. Scripto-Tokai Corp., 166 F. Supp. 2d 142, 157 (M.D. Pa. 2001), and provides for certain additional defenses, see e.g., 13 Pa. Cons. Stat. Ann. § 2316. Further, though largely mirroring each other's efforts, Defendants have not pursued a mutual defense at all points throughout this litigation. (See Doc. Nos. 63; 64.) Given these potential differences, Patriot would need at least some time to

examine and prepare to defend the new claims. Because discovery and pretrial phases of this case have passed, the Court finds that allowing this amendment would be prejudicial to Patriot.

**2. Undue Delay**

The mere passage of time does not require that a motion to amend be denied on grounds of delay and, in fact, delay alone is not a sufficient ground to deny leave to amend. Cureton, 252 F.3d at 273 (citing Adams v. Gould, 739 F.2d 858, 864 (3d Cir. 1984)). "[H]owever, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams, 739 F.2d 858 (3d Cir. 1984); see also Maersk, 434 F.3d at 204. Delay may become undue—and a motion to amend properly denied—when it places an unwarranted burden on the court or when the movant has failed to take advantage of previous opportunities to amend without adequate explanation. Bjorgung v. Whitetail Resort LP, 550 F.3d 263, 266 (3d Cir. 2008). So, bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires consideration of the movant's reasons for not amending sooner balanced against the burden of delay on the court. Id.; see also Cureton, 252 F.3d at 273.

The Plaintiffs explain that they did not amend sooner because

> [t]he impetus to seek amendment did not arise until Patriot filed its second Motion for summary judgment on April 3, 2009, nearly 10 months after seeking this relief for the first time. Had Patriot followed Home Depot's lead and raised the economic loss doctrine as a defense to strict liability and negligence in its first summary judgment motion, plaintiffs would have prudently, in parallel with defending the motion, sought leave to amend. Plaintiffs, up until the time that Patriot filed its second motion for summary judgment, believed in good faith that their strict liability and negligence claims against Patriot were the operative causes of action against Patriot.

(Doc. No. 200 at 3.) The Plaintiffs further note an element of tactics in their failure to amend, suggesting that they "had no incentive to amend their complaint until Patriot belatedly recognized that the same grounds to applying the economic loss doctrine to a product vendor also applied to a product distributor not in privity with the ultimate purchaser. Had Patriot never made this important connection, the plaintiffs would have remained strategically mute . . . ." (Doc. No. 209 at 3.) Patriot argues that Plaintiffs inappropriately focus the inquiry on its actions and also that there is no indication that Plaintiffs did not have enough information to bring these claims against Patriot from the beginning of the litigation two and a half years ago. (Doc. No. 203 at 10.)

There is no question that this request to amend is delayed: Plaintiffs filed their original complaint two and a half years ago on November 15, 2006, discovery is long closed, pre-trial motion deadlines have passed, and trial is currently scheduled to begin next week. Numerous pre-trial motions have been filed, including now resolved cross-motions for exclusion of experts and motions for summary judgment. The Court has also conducted two pre-trial conferences and is currently in preparation for the upcoming trial, having received the parties proposed voir dire questions, motions in limine, and jury instructions.

The Court cannot credit Plaintiffs' proffered reason for this delay in seeking amendment. Plaintiffs do not assert that the relevant facts underlying the new claims were reasonably unknown to them or that the claims were unavailable. Instead, Plaintiffs place blame on Patriot and claim they would have sought amendment if Patriot had raised the economic loss doctrine in its initial motion for summary judgment. It seems, however, that a motion to amend would not have been proper at that already late-stage of the litigation under these circumstances. See

8

Bethany Pharmacal Co., Inc. v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001) ("Bethany did not seek to add its promissory estoppel claim until after the close of discovery and after QVC had filed its motion for summary judgment. The factual basis of Bethany's promissory estoppel claim is virtually identical to the factual basis of its breach of contract claim; therefore, Bethany could have brought the promissory estoppel claim at the time it filed its original complaint if it had prepared for this litigation with the appropriate foresight.") Here, as discussed above and argued by the Plaintiffs, the tort and implied warranty claims are substantially similar and rely on the same underlying facts; the Plaintiffs could have asserted both claims in the initial complaint.

Further, Plaintiffs failed to amend even after the initial motions for summary judgment in which Home Depot raised the economic loss bar on the tort claims against it. The Plaintiffs appear to admit that they knew Patriot also had a potential economic loss defense, but claim to have had no incentive to amend as they were remaining strategically mute. The Court also does not find this to be a reasonable explanation for the delay in filing the motion to amend to bring potentially viable claims available since the beginning of the litigation. See Cureton, 252 F.3d at 274 ("The court concluded that the only real reason advanced by plaintiffs for the substantial lapse in time was plaintiffs' misplaced confidence in their original . . . theory."); see also USX Corp. v. Barnhart, 395 F.3d 161, 167-68 (3d Cir. 2004) ("Significantly, delay may become undue when a movant has had previous opportunities to amend a complaint."); Ali v. Intertek Testing Services Caleb Brett, 332 F. Supp. 2d 827, 829-30 (D.V.I. 2004) ("[C]ourts have found that the movant's delay may become undue after a motion for summary judgment is filed where the movant has had previous opportunities to amend a complaint, but chose not to do so.") As such, given the current stage of the case, the significant resources expended in preparing for trial

already, and the delay that would be required to cure the potential prejudice to Patriot discussed above, the Court finds that the Plaintiffs' request to amend has been unduly delayed.

## III.   CONCLUSION

Because the Court has found that granting leave to amend would be prejudicial to Patriot and that the Plaintiffs' delay in seeking amendment was undue, the Court will deny the motion for leave to amend. An order consistent with this memorandum will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARREL STEFFY AND** | : | |
| **SUSANNE STEFFY** | : | Case No. 1:06-CV-02227 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| | : | |
| **THE HOME DEPOT, INC. AND** | : | |
| **PATRIOT TIMBER PRODUCTS** | : | |
| **INTERNATIONAL, INC.** | : | |

# ORDER

**AND NOW**, this 12th day of June 2009, upon consideration of the motions for reconsideration and for leave to amend by Plaintiffs Darrel Steffy and Susanne Steffy (Doc. No. 199), filed in the above-captioned matter, and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motions are **DENIED**.

                                                    s/ Yvette Kane
                                                  Yvette Kane, Chief Judge
                                                  United States District Court
                                                  Middle District of Pennsylvania