**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARREL STEFFY AND** | : | |
| **SUSANNE STEFFY,** | : | **Case No. 1:06-CV-02227** |
| | : | |
| **Plaintiffs** | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| | : | |
| **THE HOME DEPOT, INC. AND** | : | |
| **PATRIOT TIMBER PRODUCTS** | : | |
| **INTERNATIONAL, INC.** | : | |
| | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Before the Court are several motions in limine filed by both parties.  The motions are

fully briefed and ripe for disposition.  The Court will consider all the motions in this order.

**I.    BACKGROUND**

**A.  Factual Background[1]**

In September 2005, the Plaintiffs Darrel Steffy and his wife, Susanne Steffy, began

construction of a building on their property for various uses, including: storage, fitness,

entertaining friends, display space for hunting trophies, and office space.  (Doc. No. 67 ¶ 3.)

While browsing around Home Depot, Mr. Steffy spotted plywood and decided to use it to panel

the interior walls of the building (other than the garage) because it would be cheaper and more

sturdy than drywall.  (Doc. No. 67 ¶ 11)  On or about November 10, 2005, he purchased 300 four

by eight foot sheets of 3/4 inch thick, 13 ply, cabinet grade plywood from The Home Depot

---

[1] For efficiency, these facts, which remain applicable, are taken from the Court's recent memorandum and order adjudicating the parties' first motions for summary judgment.

("Home Depot") at $23.00 per sheet. (Id..) He purchased an additional 100 sheets of similar plywood on January 3, 2006. (Id. ¶ 14.) This plywood was supplied to Home Depot from Defendant Patriot Timber Products. (Doc. No. 63 ¶ 17.) After the project was completed, starting around February 2006, people inside the building began to notice adverse effects from being inside the structure, including: watering and burning eyes, headaches, and burning in the throat. (Doc. No. 63 ¶ 21.)

When a handheld device revealed formaldehyde in the air, Mr. Steffy contacted Edward Montz Jr.'s ("Montz") of Indoor Air Solutions ("IAS") to test the building's air on July 20, 2006. (Doc. No. 67 ¶¶ 19-20.) Following the results from these tests on the plywood paneling, Montz concluded that "[t]he paneling obtained by Mr. Steffy and installed in the above-referenced building is a very potent source of formaldehyde in the building (estimated to be over 20 times the OSHA maximum Permissible Exposure Limit for industrial workplace environments at the time of installation)." (Doc. No. 63-7, Ex. G at 6 at 10.) He further concludes that of the various options to fix the problem, the best would be "a complete removal of all of the paneling and any reservoirs in the building which currently exist." (Id. at 11.) Defense experts disagree with Montz's conclusion on causation and instead conclude that decisions made in construction of the building, other formaldehyde producing materials, and an inadequate ventilation system have caused the formaldehyde problem. (Doc. No. 64 ¶¶ 60-64.)

**B. Procedural Background**

Plaintiffs filed their original complaint two and a half years ago on November 15, 2006, discovery is closed, pre-trial motion deadlines have passed, and trial is currently scheduled to begin next week. The defense motions in limine were advanced jointly by the Defendants Home

Depot and Patriot Timber Products, though Patriot Timber's has previously had all claims against it dismissed.

### C. Standard of Review

Almost all of the motions in limine by both parties seek to exclude evidence on the basis of relevance or prejudice. Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401.

## II. DEFENSE MOTIONS

### A. Repair Damages in Excess of Market Value

Home Depot argues that the Plaintiffs should be precluded from introducing evidence of "money damages for the repair of their building in excess of [the market value of the building]." (Doc. Nos. 92; 132.) The Plaintiffs have argued that their recovery should not be limited by market value because it is a special purpose structure, but the Court rejected that argument in its memorandum and order resolving the Defendants' motions for summary judgment: "[t]he Court does not agree with the Plaintiffs that their building meets the definition of a "special-purpose property" to qualify for a special damage measure. . . . Therefore, the Court finds that the Plaintiffs will be limited to the lesser of the cost of repair or the market value of the building." (Doc. No. 185 at 35.) Despite this, it is clear under this damages formulation—the general

standard in Pennsylvania when there is repairable harm to real property—that the Plaintiffs must introduce evidence regarding the cost to repair their building in order to justify recovery up to the fair market value. As such, this evidence is not irrelevant and the Plaintiffs will not be precluded from introducing evidence regarding the cost to repair the structure. But, the Court will instruct the jury that such costs are not recoverable over the amount of the building's fair market value.

### B. References to China

Home Depot argues that Plaintiffs should be precluded from making any reference to China, the plywood's country of origin, or Kerry Lu, the agent Patriot Timber Products dealt with in purchasing the plywood. (Doc. Nos. 96; 134.) Home Depot argues that this evidence is not relevant to facts at issue under Rule 402 of the Federal Rules of Evidence because the plywood's origin does not tend to prove anything about formaldehyde content or any alleged lack of labeling. (Doc. No. 97 at 4-5.) They further argue that even if it is relevant, such evidence should be excluded under Rule 403 because the probative value would be outweighed by potential prejudice, referencing the numerous widespread media reports of dangerous products from China in recent years. (Id. at 5.) After careful consideration of the arguments advanced on both sides in the briefs and at oral argument, the Court will grant the Defendant's motion. The Court is not persuaded by the Plaintiffs' arguments that the plywood's origin is relevant to any issue remaining in this case or that it is necessary to their presentation for the jury. Further, the Plaintiffs' brief was submitted prior to the Court's memorandum and order dismissing their punitive damage claims and it appears that some of their arguments as to relevance of the plywood's origin—that the plywood was "dumped" on the United States market

4

at low price—rely on the existence in the case of these rejected claims.  (Doc. No. 172 at 4.)  As such, the motion will be granted.

### C.  Reference to Inapplicable Laws, Regulations, and Standards

Defendant also moves to exclude at trial "any and all references" that might be made to federal Occupational Safety and Health Act ("OSHA") regulations governing plywood, and to California regulations respecting composite wood products that went effective in 2009.  (Doc. No. 100, at 3.)  Defendant generally moves to exclude "any testimony or evidence" regarding "any other laws, regulations or standards that do not apply to the plywood at issue."  (Doc. No. 100, at 1.)  In support of the motion, Defendant contends that any reference whatsoever to these allegedly inapplicable laws and regulations would be entirely irrelevant to the issues of this case and, even if relevant, should be excluded because of the mention of these laws and regulations would be substantially prejudicial or confusing to the jury.  Upon consideration, the motion will be denied.

The Court does not agree that because OSHA and other state regulations do not govern the plywood at issue that they must therefore be entirely irrelevant to the issues in the case. Review of the expert report of Dr. W. Edward Montz, Jr., reveals that in discussing his company's inspection and testing activities, and the conclusions reached as a result of such analysis, he observed that the concentration of formaldehyde found in Plaintiffs' house was far in excess of what would be allowable under OSHA in occupational setting.  (Doc. No. 63-7, at 10.) Immediately after noting this finding, Dr. Montz acknowledged that OSHA regulations do not govern this case because it concerns a residential building rather than an occupational space. (Id.)  But the fact that OSHA does not regulate the allowable amount of formaldehyde in the

plywood used in residential buildings does not mean that its standards are therefore irrelevant to what constitutes a potentially hazardous levels of formaldehyde exposure in general. Dr. Montz observes in his report that OSHA action levels with respect to formaldehyde are set and designed only to mitigate the risks of cancers and other acute health concerns, rather than less serious but still significant health considerations. In part for this reason, Dr. Montz concludes that OSHA action levels are substantially below those that would actually render a residential building fit for occupancy because even low levels of formaldehyde exposure can cause occupants to experience numerous adverse health effects and unpleasant symptoms. In consideration of Dr. Montz's report and the parties' briefs, the Court concludes that although OSHA's action levels are not be dispositive as to whether the formaldehyde concentration in plywood used in Plaintiff's residential building rendered it unfit for its ordinary use, OSHA's standards are not necessarily irrelevant to what constitutes a dangerous level of formaldehyde exposure resulting from Defendant's product.[2]

Although it is clear that Dr. Montz considered OSHA action levels in the course of conducting his analysis and generating his expert report, and that mention of OSHA standards might be introduced during his testimony, it is less clear how Plaintiffs might try to introduce

---

[2] Notably, in the single case Defendant relies upon in support of its motion, the district court excluded introduction of evidence regarding OSHA regulations but did not preclude the testifying expert from relying upon the OSHA regulations and violations as underlying data for his opinion. See Sprankle v. Bower Ammonia & Chem. Co., 824 F.2d 409, 416 (5th Cir. 1987). Notably, in the cited decision – which is, of course, not binding upon this Court – the Fifth Circuit was upholding the district court's exercise of its own discretion in making an evidentiary ruling, as the circuit court did not purport to make a broad pronouncement as to whether OSHA regulations may ever be admitted in cases where the regulations do not govern the conduct at issue. Indeed, the Fifth Circuit noted that ruling such as the one at issue are "often inextricably bound with the facts of a given case . . . ." Id. (internal quotation marks and citation omitted).

evidence regarding California's newly implemented regulations governing formaldehyde concentrations in composite wood products. To the extent that Plaintiff intends to introduce such evidence at trial, the Court will make a determination at that time whether the evidence may be properly admitted and Defendant may revisit its objection to such evidence. However, the Court must find at this point that Defendant has failed to sustain its burden of demonstrating that the Court should act in advance to forbid any mention of state regulations governing formaldehyde concentrations in composite wood products, as issues regarding its relevance are at this point, speculative.

Further, to the extent the Defendant maintains its objection that this evidence is prejudicial, the Court will reserve ruling until trial, when it has a full record relevant to the putatively objectionable evidence. <u>See</u> <u>In re Paoli R.R. Yard PCB Litigation</u>, 916 F.2d 829, 859 (3d Cir. 1990.)

**D. Reference to Newspaper Articles and Media Reports**

The Defendant has moved to preclude any and all references to newspaper articles and media reports regarding Chinese products and the formaldehyde content of Chinese products. (Doc. Nos. 102; 138.) The Plaintiffs do not offer any argument against this contention, stating merely that the motion is moot as they have not included any such items in their trial exhibit list. The Court has found that reference to China as the plywood's country of origin is precluded as irrelevant under Rule 402; reference to such newspaper articles or media reports is precluded for the same reasons.

**E. Introduction of Government Reports Regarding Formaldehyde**

Defendant moves to preclude Plaintiff from introducing, whether through testimony or

other evidence, a report by the Center for Disease Control ("CDC") relating to dangers stemming from the use of formaldehyde in homes and a second report issued by the United States House Committee ("House") investigating the use of formaldehyde in housing trailers provided to persons displaced by Hurricane Katrina. (Doc. No. 105.) Defendant contends that either report – both of which were appended to a declaration of Plaintiff's expert, Dr. W. Edward Montz, Jr. – are irrelevant. Alternatively, Defendant asserts that even if relevant, the prejudice of the reports substantially outweighs their evidentiary value. Defendant also asserts that either report constitutes inadmissible hearsay.

The Court disagrees that the CDC report is irrelevant. Moreover, it appears possible if not likely that the report constitutes a public record and thus would be admissible as an exception to the hearsay rule, contrary to Defendant's contention otherwise. See Fed. R. Evid. 803(8). The CDC report was appended to a declaration of Dr. Montz that Plaintiff offered in opposition to Defendant's motion for summary judgment in order to demonstrate that literature exists documenting the health risks posed by formaldehyde, specifically in the context of residential homes. The Court disagrees that the CDC's report is irrelevant to any fact in this case, in particular facts demonstrating the harmful effects of formaldehyde – an issue about which Dr. Montz will testify and which informed his expert opinion. In short, Defendant has failed to persuade the Court that any evidence regarding the CDC report must be excluded.

As for the California report, it is unclear at this pretrial stage how such evidence may be introduced and on what issues. Accordingly, the Court will reserve ruling on the relevance of this evidence. Further, to the extent the Defendant maintains its objection that the reports are prejudicial, the Court will reserve ruling until trial, when it has a full record relevant to the

putatively objectionable evidence.  See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 859 (3d Cir. 1990.)

### F.  Evidence in Pursuit of Punitive Damages

The Defendant has moved to preclude the Plaintiffs from introducing evidence or testimony in support of their punitive damage claims.  After this motion was filed, the Court dismissed the Plaintiffs' punitive damage claims.  As such, any evidence relating solely to those claims is not relevant to any remaining issue in the case and the motion will be granted.

### G.  Speculative Expert Testimony on Building Valuation

The Defendant initially moved to preclude evidence of the building's highest and best use by Plaintiffs' expert Weinstein.  (Doc. Nos. 115; 145.)  In light of the Court's order resolving the parties *Daubert* motions, the Defendant has agreed to withdraw this motion.  (Doc. No. 175 at 13.)

### H.  References to Post-Incident Testing of the Plywood

Defendant has moved to preclude any and all evidence of the Defendants' testing for formaldehyde content in newly sold plywood after plaintiff purchased the plywood at issue in this litigation.  (Doc. Nos. 115; 146.)  The Plaintiffs admit that this testing would constitute "subsequent remedial measures," and thereby would be inadmissible under Rule 407, which provides

> [w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures,

if controverted, or impeachment.

Fed. R. Evid. 407. Plaintiffs suggest that may offer such evidence if the defendants "open the door . . . by offering evidence that they never received any report of formaldehyde contamination from customers who acquired the plywood at issue" to show "defendants' tacit acknowledgment that plaintiffs' complaint was credible and had served as a 'wakeup call' to corrective action." (Doc. No. 172 at 12.) The Defendant disputes that such evidence would "open the door" to allow evidence of subsequent remedial measures. (Doc. No. 116.) As the Defendant points out, this would seem to be introducing the evidence for the purposes that the rule explicitly forbids. Because this issue is necessarily bound up with the circumstances under which evidence is presented at trial, however, the Court will reserve ruling. The Defendant may raise this issue with the Court again at trial if they believe subsequent remedial measures are being introduced in violation of Rules 403 and 407.

### I. Exclusion of Unqualified Expert Opinions by Plaintiff Expert Montz

Defendant moves to preclude Plaintiff expert Montz from offering expert opinions regarding: (1) the content of the formaldehyde in the plywood; (2) and the sufficiency of the warnings contained in the plywood's Material Safety Data Sheet ("MSDS"). (Doc. Nos. 118; 130.)

When considering the qualification requirement of Rule 702 of the Federal Rules of Evidence, a Court must discern whether a proffered witness has specialized expertise in a given field. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). In undertaking this inquiry, no particular background or credentials are necessary to establish specialized knowledge: "a broad range of knowledge, skills, and training qualify an expert." In re Paoli R.R. Yard PCB

Litig., 35 F.3d 717, 741 (3d Cir. 1994). The Third Circuit has interpreted this requirement liberally, both in the substantive and formal qualifications of experts. Id. (citing Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)). "It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Id. (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

The Defendant suggests that Montz cannot testify about the adequacy of an aspect of the plywood in this case because he is not an expert in the plywood industry. The Court must reject this contention. The cases cited by the Defendant, Redman v. John D. Brush and Company, 111 F.3d 1174, 1179 (4th Cir. 1997); Soufflas v. Zimmer, Inc., 474 F. Supp. 737, 744 (E.D. Pa. 2007), are distinguishable from the present situation. The experts in those cases attempted to opine on industry standards and rating systems for products of that industry—so-called "fire resistant" and "burglar deterrent" safes in *Redman*—or to opine on customary practices within a particular industry of medical device manufacturers in *Soufflas*. Of course, to opine on such specifics of how a specific industry sets standards or operates, the expert would need experience or expertise on the specifics of the industry. But in this case, as the Plaintiffs argue, it does not appear that Montz intends to opine on any such standard or customary practice in the plywood industry. Rather, Montz will opine, based on testing of the plywood panels and formaldehyde levels in the building's air, that the plywood caused the levels of formaldehyde in the building. It is not apparent why Montz would need to be a plywood industry insider to opine on these matters.

The Defendant further argues that Montz should not be allowed to offer testimony on the inadequacy of Patriot's MSDS sheet because he has no experience or educational background in consumer warnings. In his report, Montz opines that the MSDS sheet is inadequate: "it is my belief that the MSDS does not comply with OSHA requirements for disclosure of hazards of formaldehyde in this particular product." (Montz Report at 10.) The relevance of this testimony to the remaining issues in the case is questionable, and the Plaintiffs represent that they do not intend to have Montz testify on the adequacy of the warnings in the plywood's labeling and MSDS anyway. (Doc. No. 172 at 14.) Plaintiffs only wish Montz to "testify generally to the existence of the MSDS sheet and his knowledge . . . of the purposes that an MSDS is intended to serve." (Id.) Plaintiffs also wish Montz to testify about his general knowledge of the OSHA regulations. (Id.) Based on the record, the Court finds that Montz is qualified to opine generally on these matters. The Defendant may renew this objection at trial if Montz's testimony exceeds this general scope.

### J.  Evidence of Loss of Use Damages

The Defendant has moved to exclude any evidence supporting the Plaintiffs' damage theory of loss of use for items of personal property inside the building. (Doc. Nos. 121; 148.) In their response, the Plaintiffs represent that they have voluntarily abandoned their claim for damages resulting from loss of use of personal property contained within the building. As such, evidence relating solely to loss of use of personal property in the building is not relevant to any issue in the case and will be precluded.

### K. Speculative Causation Testimony

The Defendant has moved to exclude Montz's opinion that the plywood panels caused

the elevated levels of airborne formaldehyde found in the interior air of the building. (Doc. Nos. 124; 150.)  The Defendant argues that Montz's testimony does not meet the standards for expert testimony set forth in in Rules 702 and 703.  The Defendant advances a very similar challenge as that set out and rejected by the Court in its previous *Daubert* motion, but attempts to distinguish the Court's prior disposition: "the instant Motion *in Limine* assumes the validity of Montz's methodology for purposes of the motion, but argues that Montz does not apply his methodology in a manner that is acceptable under the Federal Rules of Evidence."  (Doc. No. 175 at 17.)  The Defendant argues that Montz did not support his methodology because he did not rely on reliable data, specifically, he extracted an admittedly small sample size of plywood for testing and he did not take calculations of the building's ventilation rate.  (Doc. No. 125 at 7.)  As the Plaintiffs point out, however, the Court did indeed consider and reject these very contentions in its memorandum and order resolving the parties' *Daubert* motions.  (Doc. No. 172 at 15-16.)  Accordingly, the Court finds that Montz's testimony meets the standards set in Rules 702 and 703; the motion will be denied.

### L.  HPVA Test Results

The Defendant moves to preclude the results of tests conducted by the Hardwood Plywood and Veneer Assocatiion on plywood samples submitted by the Plaintiffs on the bases of spoliation.  (Doc. Nos. 127;152)  In support of this contention, the Defendant submits that Plaintiffs failed to provide an opportunity to examine the samples submitted, to monitor the manner of the plywood's retrieval and submission to the laboratory, and to collect contemporaneous samples.  (Doc. No. 128 at 1.)

Even assuming spoliation has occurred here, the Court does not believe a sanction is

appropriate under these circumstances. The Third Circuit has held that a district court should assess three key considerations to determine whether a sanction for spoliation is appropriate: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994); see also In re Hechinger Inv. Co. Of Delaware, Inc., 489 F.3d 568, 579 (3d Cir. 2007).

## 1. Fault

The Court finds the first consideration weighs against a sanction. The Court rejects Defendant's argument that Plaintiff is at fault for its alleged failure to allow Patriot to monitor the collection of the plywood samples used in the testing. Initially, Defendant's contention seems plainly contradictory to the Third Circuit's decision in *Schmid*, holding under similar circumstances that such early investigations do not require participation by all potential parties:

> [w]hen Dr. Bratspies conducted his investigation, no suit had been filed and Schmid did not know whether he had a basis for instituting suit. Thus, no defendant had been identified and, a fortiori, no defense expert had been engaged. An across-the-board rule that would require an identification of all potential defendants at this nascent stage of the potential controversy and an invitation to each of them to attend an exploratory investigation would be inefficient, if not altogether unworkable. Many accident investigations do not lead to litigation and many narrow the field of potential defendants.

Schmid, 13 F.3d at 81. Further, contrary to Defendant's contentions, the record shows that a representative from Patriot actually was permitted to inspect the building as early as July 31, 2006. (Doc. No. 129, Ex. A.) Though Defendant makes much of the fact that Patriot was not

able to monitor the removal of the plywood, nothing in the record shows that such measures were even considered at the time; the communications show that Patriot actually requested the panels be removed by the Plaintiffs for shipment to Patriot's lab. (Id.) While communication cut off between August 11, 2006, and September 19, 2006, it seems that Plaintiffs were engaged in hiring new counsel in that time period as Mr. Caplan quickly responded to e-mail communications after that point. Further, e-mail correspondence between Patriot employees show that Mr. Caplan offered to get Patriot samples of the plywood shortly after the Plaintiffs' own testing was completed and it is not clear that such further request was ever made. (Id. Ex. H.)

As for destruction of the plywood sample actually tested by the HPVA lab, it is unclear from the record whether Plaintiffs are at fault for not preserving the sample. Plaintiffs represent that the testing process destroys the samples while Defendant argues that the method described in the HPVA lab report gives "no indication that the plywood is destroyed in the process." While Plaintiffs have not supported their representation, the Court is also not convinced the samples could have been maintained solely by Defendant's reliance on the brief description of the testing process given in the HPVA reports. As such, the record is not sufficient for the Court to find fault for this failure to preserve the samples.

## 2. Prejudice

The Court finds that the second consideration also weighs against a sanction. This is not a case where the product at issue in the litigation has been lost or destroyed by a party. Here, it would appear undisputed that a large amount of the plywood paneling at issue is still available at the Steffy building even today. Defendant argues that the remaining plywood is essentially

useless because the formaldehyde content in the plywood decreases over time, arguing that any testing done after the initial samples were taken in September 2006 would be ineffectual. The Court disagrees. The Defendant has not convincingly argued that it was unable to avail itself of later testing to challenge Montz's conclusions or that earlier testing would have provided some additional evidence subsequently unavailable. See Schmid, 13 F.3d at 80. It is not apparent to the Court why the simple decrease in formaldehyde content in the plywood over time would render any subsequent testing ineffectual. Additionally, even if the originally tested plywood samples were maintained, they would be subject to the same decreasing formaldehyde as the plywood remaining in the building. Lastly, as the Plaintiffs point out, the Defendant's contention is complete supposition because neither Defendant chose to test this plywood during discovery, which commenced in early spring 2007. As such, the Court finds that the second consideration weighs against a sanction.

Because the Court has determined that the first two *Schmid* factors weigh against a sanction, the Court will not consider what sanction may be appropriate. The motion will be denied.

### M. Lay Witnesses

Defendant moves to exclude the testimony of William Way and Paul Lewandowski ("Way and Lewandowski"). Way and Lewandowski, proffered as lay witnesses, provided estimates of the cost of repair and remediation measures proposed by Edward Montz. Defendants argue that Way and Lewandowski's testimony is inadmissible expert testimony because it

requires "technical or specialized knowledge[3]" inadmissible by a lay witness. For the reasons that follow, the motion will be denied.

The Court sees no material difference between Way and Lewandowski's before-the-fact testimony as to the cost of repairs and an after-the-fact submission of a repair receipt by Plaintiff. Here, the repair work has not yet been conducted, and accordingly, in order to prove damages, Plaintiff will need to show the prospective cost of the repairs required to fix the building. Way and Lewandowski's testimony has been proffered for just that purpose: Plaintiff states that "the direct testimony of each of these witnesses will be limited to rationalizing their respective employer's project cost estimates." (Doc. No. 172 at 20.)

Montz recommended in an expert report, based on his scientific and specialized knowledge, what repairs and remediations would be required to make Plaintiff's house habitable. (Doc. No. 167 at 12.) Way and Lewandowski were solicited to estimate the cost of such repairs. (Doc. No. 167 at 17-18, 20-24.) Their testimony, limited to their personal knowledge of the amount their companies would personally charge Steffy calls only upon "the particularized knowledge that the witness has by virtue of his or her position in the business," and is therefore admissible. Fed. R. Evid. 701 advisory committee's notes. Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1222 (11th Cir. 2003) (discussing testimony that is of

---

[3]Federal Rule of Evidence 701 states that opinion testimony by lay witnesses is admissible provided it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The third requirement, at issue in this motion, was implemented to "eliminate the risk that the reliability requirements set forth in rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note.

the "type traditionally and properly considered lay witness testimony," which is still admissible under rule 701, and determining that a shipbuilder employee's testimony as to the cost and reasonability of the repairs he made on a damaged ship was admissible lay witness testimony); Int'l Rental and Leasing Corp. v. McClean, 303 F. Supp. 2d 573 (D.V.I. 2004) (reversing trial court for failure to allow vehicle repairman to testify as to the cost of repairing a car under either rule 701 or rule 702); Laconner Assoc. Ltd. v. Island Tug and Barge Co., 2008 WL 2077948 *3 (W.D.Wash. 2008) (requiring that a hired contractor with factual knowledge as to the costs of work and cost alternatives be allowed to testify as fact witness but reserving right to prevent at trial testimony that goes beyond the scope permissible under rule 701); Manoma Realty Mgmt., LLC v. Federal Pacific Elec. Co., 2007 WL 2175947, *5 (S.D.N.Y. July 27, 2007) (reserving for trial the question of whether a contractor's report of needed repairs and cost estimates would be accepted as expert testimony or admissible as from a fact witness).

Accordingly, the motion in limine will be denied; Defendant may renew the motion at trial to the extent Way or Lewandowski's testimony exceeds the scope permissible for a lay witness under rule 701.

## III.  PLAINTIFFS' MOTIONS

### A.  Industry Knowledge on Plywood's Propensity to Off-gas Formaldehyde

Plaintiffs seek to exclude evidence of the prevalence of knowledge in the construction industry that plywood off-gasses formaldehyde.  (Doc. No. 154.)  They argue that this evidence is not relevant because there is no evidence that Mr. Steffy was actually aware that Plywood could outgas hazardous amounts of formaldehyde and any purported knowledge in the construction industry does not make it more likely that he would have had subjective knowledge

of this risk.  (Doc. No. 155.)  Defendant argues that such evidence tends to prove that the

Plaintiffs' failure to consult with an expert in construction caused the alleged problem and also

that this evidence tends to prove that Mr. Steffy, as a member of the construction industry, was

subjectively aware of the risks involved.  (Doc. No. 173.)  Defendant's arguments— some of

which seem predicated on causes of action no longer at issue—are not persuasive.  There little

indication from the record what constitutes the "construction industry," and it is not clear that

Mr. Steffy's experience would qualify him as a member of that industry.  It is also not apparent

how such evidence supports Defendant's "causation" defense, and the Defendant's have not

sufficiently explained this connection or provided any authority on the issue.   As such, the

motion will be granted.

## B.  Design and Operational Sufficiency of the HVAC system

In their reply brief, Plaintiffs represent that this motion is withdrawn.  (Doc. No. 176 at

3.)

## C.  Zoning and Building Code Requirements

Plaintiffs seek to preclude evidence that the building at issue fails to comply with the

local building and zoning codes.  (Doc. No. 154.)  They argue that this evidence is not relevant

because the Plaintiffs have never been cited for a code violation and have received a certificate

of occupancy.  (Doc. No. 155.)  They also argue that such evidence is prejudicial.  The

Defendant argues that such evidence is relevant because it shows that Plaintiffs design of the

building caused the problems and not the plywood itself.

The Court must agree with the Plaintiffs that the evidence of Plaintiffs alleged failure to

design the building in compliance with building codes is questionable.  Defendant argues that the

19

mere fact that a "certificate of occupancy" was issued does not establish the building complies with the local codes and also that there is no evidence that township officials performed the requisite calculations or properly reviewed the building's ventilation requirements and HVAC system. This argument is not persuasive. As the Plaintiffs submit, the zoning code directs that the zoning officer issue the certificate of use and occupancy when he is "satisfied that the work is in conformity and compliance with the work listed in the issued permit and all other pertinent laws." (Doc. No. 176 at 4.) Further, from other exhibits submitted by Plaintiffs, it seems that the township did carefully inspect this structure before issuing the permit. (Doc. No. 176-3, Ex. B.)

Despite this, the Court cannot say the evidence is completely irrelevant at this pre-trial stage. The Defendant will be permitted to offer testimony generally about the alleged problems with the design of the building and HVAC system, as Plaintiffs admit such evidence is relevant. Additionally, though not discussed by the parties, both appraisers have considered the land's zoning classification to some extent in assessing market value, so this evidence would seem relevant and admissible to some extent for impeachment on the issue of damages. As such, if the Plaintiffs maintain this objection, they are instructed to re-raise it at trial so the Court can assess the context of the Defendant's attempt to introduce this evidence.

To the extent the Plaintiffs maintain their objection that this evidence is prejudicial, the Court will reserve ruling until trial, when it has a full record relevant to the putatively objectionable evidence. See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 859 (3d Cir. 1990.) As such, the motion will be denied at this time.

**D. Post-Complaint Formaldehyde Testing on Separate Shipments of Plywood**

Plaintiffs seeks to preclude any evidence of Patriot's testing of samples of plywood conducted after the complaint in this case was filed and from plywood not used in the Plaintiffs' building. (Doc. No. 154.) They argue that this testing has no probative value because the tested plywood comes from one of twelve different Chinese manufacturers and there is no evidence to show that the Plaintiffs' plywood and the subsequently tested plywood came from the same manufacturer. (Doc. No. 155.) They further argue that the testing method used was different. (Doc. No. 176 at 7.)

After reviewing the arguments of both parties, the Court must agree with the Plaintiffs that these tests have no probative value. The Defendant essentially admits that it is impossible to discern the source of the tested plywood, arguing only that it was manufactured by "the same group of mills and passed through the same port of origin." (Doc. No. 173 at 13.) Given the complete lack of evidence in the record about these manufacturers or their procedures and methods, the Court cannot find that the product they produce is fungible. Further, beyond simply using a different method of testing formaldehyde concentration, it appears that some of the testing even involved "11 ply" plywood instead of the "13 ply" variety that the Plaintiffs' purchased. (Doc. No. 176-4, Ex. C.) As the Plaintiffs argue, there is no evidence in the record showing that these two methods or variants of plywood are comparable. Given the uncertainties as to the manufacturer of the plywood and the uncertain correlation between the utilized testing procedures, the Court finds that the tests are not relevant. The motion will be granted.

## E.  Plywood's Use as Wall-Paneling

Plaintiffs seek to preclude evidence that it is rare to use plywood to panel the interior walls of buildings. (Doc. No. 154.) As with other parts of these motions in limine, part of

Plaintiffs arguments seem to rely on causes of action that have been subsequently dismissed by this Court. While conceding the relevance of evidence of the amount of exposed plywood in the building, they argue that this abnormal use evidence would not "add nothing substantive other than prejudice, to the case." They further argue that such evidence is contradicted by the plywood's finished appearance which makes it suitable for wall-paneling.

After considering the parties' arguments, the Court finds that Plaintiffs have not sustained their burden of demonstrating that the Court should act in advance to preclude this evidence. The implied warranty statute provides that to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa. Con. Stat. Ann § 2314. Plaintiffs' arguments, such as reference to the plywood's appearance, seem best presented to the jury to consider in its determination of whether this product has been used for its ordinary purposes. As such, the motion will be denied at this time.

To the extent the Plaintiffs maintain their objection that this evidence is prejudicial, the Court will reserve ruling until trial, when it has a full record relevant to the putatively objectionable evidence. See In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 859 (3d Cir. 1990.)

**F.  Absence of Prior Complaints of Contamination**

At the pre-trial conference, the parties indicated to the Court that there may be a potential resolution of this issue. As such, the Court will reserve ruling on this issue.

**G.  Other Formaldehyde Emitting Products in the Building**

The Plaintiffs seek to exclude evidence that other products in the building may have contributed to the Building's formaldehyde contamination. (Doc. No. 154.) They argue that

there is no evidence other than speculation that other materials in the building contained sufficient amounts of formaldehyde to cause the unsafe levels in the building. (Doc. No. 155.) The Court partially addressed this issue in its order disposing of the parties *Daubert* motions, precluding Defendant's expert William Wheatley from opining that construction glues used in the building were a substantial contributor of formaldehyde. (Doc. No. 160 at 24.) The Court found that such an opinion was unreliable because Wheatley performed no testing, did not quantify the amount of glue used, and did not even identify the particular type of glue used in the building. (Id.) The Court agrees that the same reasoning would apply to preclude testimony that other products in the building were the substantial contributor of formaldehyde, as there is no indication in the record that Defendant's experts performed the requisite testing to reliably reach a conclusion.

The Court does agree with the Defendant that evidence of the presence of these formaldehyde producing products is relevant in challenging Montz's expert conclusions, however. (Doc. No. 173 at 21.) As the Court noted in its *Daubert* order, "while the fact that Montz did not perform actual tests on these other potential sources might affect the weight of his conclusion, it does not make his methodology unreliable. The Defendants' concern is more appropriately addressed on cross-examination and by presentation of contrary evidence at trial." (Doc. No. 160 at 8.) Accordingly, the motion will be granted in part.

IV.    **CONCLUSION**

For the foregoing reasons, the motions in limine for the Plaintiff and Defendant will be granted in part and denied in part. An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARREL STEFFY AND | : | |
| SUSANNE STEFFY, | : | Case No. 1:06-CV-02227 |
| | : | |
| Plaintiffs | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| | : | |
| THE HOME DEPOT, INC. AND | : | |
| PATRIOT TIMBER PRODUCTS | : | |
| INTERNATIONAL, INC. | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW**, this 15th day of June 2009, upon consideration of the motions in limine by

Plaintiffs and Defendant The Home Depot, filed in the above-captioned matter, and for the

reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY**

**ORDERED THAT**:

1.   **Defendant's Motions**

     a.   Defendant's Motion to Exclude Repair Damages in Excess of Market
          Value (Doc. Nos. 92; 132) is **DENIED**.

     b.   Defendant's Motion to Exclude References to China and Kerry Lu (Doc.
          Nos. 96; 134) is **GRANTED**.

     c.   Defendant's Motion to Exclude Inapplicable Laws, Regulations and
          Standards (Doc. Nos. 99; 136) is **DENIED**.

     d.   Defendant's Motion to Exclude Reference to Newspaper Articles and
          Media Reports (Doc. Nos. 102; 138) is **GRANTED**.

     e.   Defendant's Motion to Exclude Government Reports Regarding
          Formaldehyde (Doc. Nos. 105 ;140) is **DENIED**.

f.     Defendant's Motion to Exclude Evidence in Pursuit of Punitive Damages (Doc. Nos. 108; 142) is **GRANTED**.

g.     Defendant's Motion to Exclude References to Post-Incident Testing of the Plywood (Doc. No. 115;146) is **DENIED**.

h.     Defendant's Motion to Exclude Unqualified Expert Opinions by Montz (Doc. Nos. 118; 130) is **DENIED**.

i.     Defendant's Motion to Exclude Evidence of Loss of use Damages (Doc. Nos. 121; 148) is **GRANTED**.

j.     Defendant's Motion to Exclude Evidence of Speculative Causation (Doc. Nos. 124; 150) is **DENIED**.

k.     Defendant's Motion to Exclude HPVA Test Results (Doc. Nos. 127; 152) is **DENIED**.

l.     Defendant's Motion to Exclude Testimony of William Way and Paul Lewandowski (Doc. Nos. 165; 168) is **DENIED**.

2.     **Plaintiffs' Motion (Doc. No. 154)**

a.     Plaintiffs' Motion to Exclude Evidence of Industry Knowledge of Plywood's Propensity to Off-Gas Formaldehyde is **GRANTED**.

b.     Plaintiffs' Motion to Exclude Evidence of Zoning and Building Code Requirements is **DENIED**.

c.     Plaintiffs' Motion to Exclude Evidence of Post-Complaint Formaldehyde Testing on Separate Shipments of Plywood is **GRANTED**.

d.     Plaintiffs' Motion to Exclude Evidence of Plywood's Rare Use as Wall-Paneling is **DENIED**.

e.     Plaintiffs' Motion to Exclude Evidence of Other Formaldehyde Emitting Products in the Building is **GRANTED IN PART** as follows:

i.     Expert testimony that other products in the building were a substantial contributor of formaldehyde is excluded.

ii.    The presence of other formaldehyde producing products in the building is relevant for the purpose of impeaching Plaintiffs' expert Montz and is not excluded.

s/ Yvette Kane
_____

Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania